**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re Ex Parte Application of CRC LIQUID STRATEGIES FUND, LP for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 | Case No 25 Misc. _____ |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION**
**FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO TAKE**
**<u>DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ................................................................................................... 2

I.    The Parties ........................................................................................................ 2

II.   Background ....................................................................................................... 5

III.  The Bankruptcy Proceeding ............................................................................. 10

IV.  The Contemplated Préstamos Litigation .......................................................... 12

V.   The Discovery Sought is Relevant and Necessary for the Bankruptcy Proceeding and Contemplated Préstamos Litigation ........................................................................ 15

VI.  The Discovery Sought Cannot Be Obtained in the Bankruptcy Proceeding or Contemplated Préstamos Litigation in Mexico ............................................................... 16

ARGUMENT ........................................................................................................................ 17

I.    This Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782 ............... 17

    A.  The Relevant Entities Are Found in This District. .............................................. 18

    B.  CRC-LSF Seeks Discovery From the Relevant Entities for Use in a Foreign Proceeding. ............................................................................................................. 18

    C.  CRC-LSF Is an Interested Person ...................................................................... 19

II.   This Court Should Exercise its Discretion in Favor of Granting the Application .......... 19

    A.  The Relevant Entities Are Not Participants in the Foreign Proceeding ................. 20

    B.  Mexican Courts and Prosecutors Would be Receptive to this Court's Assistance ... 21

    C.  The Application Does Not Implicate any Foreign Proof Gathering Restrictions ....... 21

    D.  The Discovery Sought is Not Unduly Burdensome .............................................. 22

CONCLUSION ...................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application of Gorsoan Ltd. & Gazprombank OJSC*,
2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ................................................................... 21

*In re Application of Operacion y Supervision de Hoteles, S.A. de C.V. for an Ord.
to Conduct Discovery for Use in a Foreign Proceeding*,
No. 14 MISC. 82 PGG, 2015 WL 82007 (S.D.N.Y. Jan. 6, 2015) ................................... 21

*B&C KB Holding GmbH v. Goldberg Lindsay & Co. LLC (In re B&C Kb Holding
GmbH)*, No. 23-1014, 2024 WL 3170983 (2d Cir. June 26, 2024) .................................. 20

*Banco Mercantil de Norte, S.A. v. Páramo*,
No. 4:23-MC-01188, 2024 WL 4905981 (S.D. Tex. Nov. 27, 2024) ................................ 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......................................................................................................... 18

*In re del Valle Ruiz*,
939 F.3d 520 (2d Cir. 2019) ........................................................................................ 18, 22

*Edelman v. Taittinger (In re Edelman)*,
295 F.3d 171 (2d Cir. 2002) .............................................................................................. 18

*Gonzalez v. Verfruco Foods, Inc.*,
No. 21-12922, 2023 WL 1794391 (11th Cir. Feb. 7, 2023) ............................................. 23

*Gorsoan Ltd. v. Sundlun*,
843 F. App'x 352 (2d Cir. 2021) ....................................................................................... 19

*In re Hornbeam Corp.*,
722 Fed. App'x 7 (2d Cir. 2018) ......................................................................................... 1

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ...................................................................................................*passim*

*In re Iraq Telecom Ltd.*,
2019 WL 3798059 (S.D.N.Y. Aug. 13, 2019) .................................................................. 20

*Lancaster Factoring Co. v. Mangone*,
90 F.3d 38 (2d Cir. 1996) .................................................................................................. 19

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ........................................................................................ 18, 22

*O'Keeffe v. Adelson (In re O'Keeffe)*,
   650 Fed. App'x 83 (2d Cir. 2016)...................................................................... 21

*In re Refinería de Cartagena S.A.S.*,
   No. 23 MISC. 455 (JPC), 2024 WL 95056 (S.D.N.Y. Jan. 8, 2024)...................... 18, 19, 22

*Ssangyong Corp. v. Vida Shoes Int'l, Inc.*,
   No. 03-CV-5014, 2004 WL 1125659 (S.D.N.Y. May 20, 2004) ........................................ 23

**Statutes**

28 U.S.C. § 1782 ..............................................................................................*passim*

28 U.S.C. § 1782(a)............................................................................................. 18, 20, 21

**Other Authorities**

Fed R. Civ. P. 26(b)(1) ........................................................................................ 22

CRC Liquid Strategies Fund, LP ("**CRC-LSF**") respectfully submits this memorandum of law in support of its application (the "**Application**") for an order pursuant to 28 U.S.C. § 1782 authorizing the issuance of subpoenas (the "**Subpoenas**"), substantially in the form attached as exhibits 1-3 to the Declaration of Douglas E. Spelfogel (filed contemporaneously herewith) to Citigroup Inc. ("**Citigroup**"), Santander US Capital Markets LLC ("**Santander CM**," and together with Citigroup, the "**Bank Entities**"), and PricewaterhouseCoopers LLP ("**PwC**," and together with the Bank Entities, the "**Relevant Entities**") for the production of documents and other evidence for use in the legal proceedings described below. In support of the Application, CRC-LSF respectfully states as follows.

## PRELIMINARY STATEMENT

CRC-LSF seeks evidence for use in an ongoing bankruptcy proceeding and contemplated litigation in Mexico relating to a scheme orchestrated by Préstamos Felices en 15 Minutos, S.A. de C.V., SOFOM, E.N.R. and its affiliated entities and principals (collectively, "**Préstamos Felices**") to defraud CRC-LSF and certain CRC-LSF affiliates (collectively, "**CRC**"), and other funds managed or sponsored by CRC, and wrongfully divert tens of millions of dollars for their own benefit and at the expense of CRC and other Préstamos Felices stakeholders.[1]

Citigroup, Santander CM, and PwC have relevant, discoverable information that will assist in the pending and contemplated proceedings in Mexico. Citigroup and Santander CM possess or have the practical ability to obtain Préstamos Felices's bank statements, wire transfer records, and other documents and communications relevant to the diversion of funds and the machinations of the fraudulent scheme. PwC possesses or has the practical ability to obtain Préstamos Felices's

---

[1] CRC-LSF moves to file this application *ex parte,* a common and accepted practice that this Court and many others regularly grant pursuant to 28 U.S.C. § 1782. *See e.g., In re Hornbeam Corp.*, 722 Fed. App'x 7, 10-11 (2d Cir. 2018) (noting there is no impropriety in bringing Section 1782 applications *ex parte* since respondents may move to quash).

investment materials and other documents and communications related to the Préstamos Felices's diversion of funds and representations to third parties. The requested documents are critical to halt further diversion of CRC assets and are central to establishing the nature and scope of the alleged fraudulent scheme, details regarding the flow of funds and the identification of recipients and beneficiaries of the diverted assets, and the involvement of intermediaries or co-conspirators in connection with the fraudulent scheme, including support for claims for avoidance, restitution, damages, and clawback under Mexican insolvency and civil law.

As set forth herein, the statutory requirements of section 1782 and the discretionary factors enumerated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264–65 (2004) are all satisfied here. The Court should grant the Application.

## **FACTUAL BACKGROUND**[2]

### I.   **The Parties**

Applicant CRC-LSF is a Delaware limited partnership with its principal office in New York. CRC is primarily engaged in investing in global credit markets.

Préstamos Felices is a Mexican variable capital corporation (*sociedad anónima de capital variable, sociedad financiera de objeto múltiple, entidad no regulada*). As discussed below, Préstamos Felices is a subject of the pending bankruptcy proceeding and a separate pending and/or contemplated Mexican litigation to which CRC is or will be a party.

Vales de Felicidad, S.A.P.I. de C.V., SOFOM, E.N.R. ("**Vales de Felicidad**") is a Mexican variable capital corporation (*sociedad anónima promotora de inversión de capital variable,*

---

[2] Unless otherwise noted, the information set forth in the factual background is drawn from the contemporaneously filed declaration (the "**Declaration**") of Jesús Ángel Guerra Méndez.

2

*sociedad financiera de objeto múltiple, entidad no regulada*). Vales de Felicidad is a subject of pending and/or contemplated Mexican litigation to which CRC is or will be a party.

Contratos y Servicios P.F. S.A. de C.V. ("**Contratos y Servicios**") is a Mexican variable capital corporation (*sociedad anónima de capital variable*). Contratos y Servicios is a subject of the contemplated Mexican litigation to which CRC will be a party.

Cherry Select, S.A.P.I. de C.V., Cherry Wealth Management, S.A.P.I. de C.V., Cherry Premium, S.A.P.I. de C.V., Cherry Exclusive S.A. de C.V., SOFOM E.N.R., and Cherry W Partners, S.A.P.I. de C.V. (the "**Cherry Entities**") are Mexican variable capital corporations (*sociedades anónimas promotoras de inversion de capital variable*). The Cherry Entities are subjects of the contemplated Mexican litigation to which CRC will be a party.

Grupo Financiero Banamex, S.A. de C.V. ("**Banamex Holding**") is a variable capital corporation (*sociedad anónima de capital variable*), headquartered in Mexico City, Mexico. Banamex Holding is a financial holding company, and it oversees various subsidiaries, including banking, insurance, and other financial services. Banco Nacional de México, S.A., Institución de Banca Múltiple, Grupo Financiero Banamex ("**Banamex Bank**") is a Mexican *sociedad anónima, institución de banca multiple*, authorized to offer a wide range of banking services.

Citigroup is an American multinational investment bank and financial services company. Citigroup is headquartered in New York, New York and, as of the date of this declaration, is the indirect parent corporation and affiliate of Banamex Bank. By virtue of its ownership and control of Banamex Bank, Citigroup is believed to possess, or have access to, documents or information relevant to the contemplated proceedings in Mexico.

Banco Santander México, S.A., Institución de Banca Múltiple, Grupo Financiero Santander México ("**Santander México**") is a *sociedad anónima* and banking institution authorized and regulated under Mexican law. Headquartered in Mexico City, Mexico, Santander México operates as the principal banking subsidiary of Grupo Financiero Santander México, S.A.B. de C.V., a publicly traded financial holding company listed on both the Bolsa Mexicana de Valores and the New York Stock Exchange through American Depositary Receipts.

Santander México is an indirect subsidiary and affiliate of Banco Santander, S.A., a global financial services institution headquartered in Madrid, Spain. Banco Santander, S.A. holds a controlling interest in Grupo Financiero Santander México, S.A.B. de C.V., and conducts international operations through a network of regional subsidiaries and affiliates, including in the United States.

In the United States, Banco Santander, S.A. operates primarily through Santander Holdings USA, Inc., its intermediate holding company headquartered in Boston, Massachusetts. Santander Holdings USA, Inc. oversees several subsidiaries, including Santander CM, the institutional broker-dealer of the Banco Santander, S.A. global banking group.

Santander CM and Santander Mexico operate under the common ownership and control of Banco Santander, S.A. Santander CM is believed to possess, or have access to, documents or information relevant to the contemplated proceedings in Mexico.

PwC is a Delaware limited liability partnership with its principal place of business at 300 Madison Ave, New York, NY 10017. PwC offers audit, tax, and advisory services to domestic and international clients.

PricewaterhouseCoopers México, S.C. ("**PwC Mexico**") is a professional services firm organized under the laws of Mexico, with its principal office at Mariano Escobedo 573, Colonia Bosque de Chapultepec I Sección, Miguel Hidalgo, Mexico City, C.P. 11580. PwC Mexico provides audit, tax, advisory, and consulting services to clients operating across a range of industries in Mexico.

PwC regularly collaborates with PwC Mexico on cross-border engagements involving multinational clients. This collaboration often includes the development and sharing of joint work product, audit files, tax analyses, and communications. In many cases, such work is conducted on shared technology platforms or cloud-based systems maintained at the regional or global level, to which both PwC and PwC Mexico may have access. PwC and PwC Mexico are member firms of the PwC global network. Due to their close operational and informational integration, PwC may have possession, custody, or control of documents or data relevant to the contemplated legal proceedings in Mexico.

## II.    Background

Between June 23, 2017, and September 18, 2019, CRC (as lender) entered into three loan agreements (the "**Loan Agreements**") with Préstamos Felices and Vales de Felicidad (as borrowers, collectively, the "**Préstamos Entities**"). The Préstamos Entities' stated purpose for obtaining these loans was to finance the origination of microloans in Mexico for hundreds of thousands of its clients.

In aggregate, CRC extended approximately 4 billion pesos (approximately $207 million USD using currently prevailing USDMXN exchange rates) to the Préstamos Entities under the Loan Agreements.

To secure the repayment of the loans, a diverse pool of receivables originated by the Préstamos Entities were transferred to various Mexican Irrevocable Management, Source of Payment, and Guaranty Trusts (collectively, the "**Guaranty Trusts**") through the execution of factoring agreements governed by Mexican law. Given the true sale nature of the transfer, the Guaranty Trusts are the legal owners of the receivables. The foregoing was established to preserve and protect the subject collateral for the benefit of CRC as lender, in connection with the loans advanced to the Préstamos Entities.

Thereunder, the Préstamos Entities were appointed as servicers under the relevant Servicing Agreements by the Guaranty Trusts (the legal owners of the receivables). As servicers, the Préstamos Entities were contractually responsible for the day-to-day administration of the loan portfolio, including the collection of payments from borrowers, the deposit of those payments into designated trust accounts, and the delivery of regular portfolio performance and payment reports to the relevant parties. The Préstamos Entities acted as agents on behalf of the Guaranty Trusts, and their role was strictly limited to servicing: they had no ownership rights over the receivables or collections themselves. The trustee to the Guaranty Trusts appointed Administratradora de Activos Terracota, S.A. de C.V. ("**Terracota**"), as Master Servicer, responsible for overseeing Préstamos Entities' activities as servicer.

To facilitate collections for the Guaranty Trusts, the Préstamos Entities entered into direct debit agreements (*contratos de domiciliación,* "**Debit Agreements**") with multiple Mexican financial institutions, including the Bank Entities. Under these arrangements, the Bank Entities debited loan repayment amounts directly from the debtors' personal accounts on each scheduled payment date as instructed by a Préstamos Entity. These debited amounts were first credited into

bank accounts (the "**Repayment Accounts**") owned and controlled by the Préstamos Entities or affiliated entities.

Following receipt in the Repayment Accounts (i.e., the accounts held by the Préstamos Entities), the funds were then transferred into accounts held by an irrevocable master trust (the "**Master Trust**" and the accounts held thereunder, the "**Master Trust Accounts**"). The Master Trust was created to ensure centralized management and control of all collections arising from the assigned receivables. To that end, the Master Trust was designated to hold and operate the Master Trust Accounts, which functioned as the official repayment destination for the financing structure described in Paragraphs 23 through 29 of the Petition. Préstamos Felices executed agreements with the Bank Entities whereby the Bank Entities were instructed to redirect future microloan repayments into the Master Trust Accounts. Once received in the Master Trust Accounts, the collections associated with the receivables legally owned by each Guaranty Trust were swept into the respective Guaranty Trusts accounts. The Guaranty Trusts then applied those funds pursuant to their respective payment waterfalls, which included, among other priorities, the repayment of the loans extended by CRC (as sole senior beneficiary of the Guaranty Trust).

The trustee of the Master Trust also entered into a servicing agreement with Préstamos Felices, formally appointing it as the servicer of the Master Trust structure. In this role, Préstamos Felices was contractually obligated to identify, reconcile, and report on all collections deposited into the Master Trust's Accounts, ensuring accurate allocation of funds to the Guaranty Trusts and, ultimately, to the creditors.

In parallel, the trustee to the Master Trust appointed Terracota to oversee and monitor the performance of Préstamos Felices' performance in its capacity as servicer under the Master Trust

structure. Terracota's role, amongst others, was to ensure that Préstamos Felices complied with its reporting and reconciliation obligations under the Master Trust structure.

This Master Trust servicing framework is distinct from, but complementary to, the servicing arrangements entered into under the Guaranty Trusts, and is designed to provide a centralized layer of operational oversight across the entire collection structure.

Beginning no later than December 2024, Préstamos Felices and Vales de Felicidad, each in their capacity as servicer under the Master Trust and Guaranty Trusts, began concealing documents from CRC. On several occasions, Préstamos Felices failed to provide Terracota with certain portfolio, collections, and distribution reports upon Terracota's request. Because of Préstamos Felices' non-compliance with the loan agreements, Terracota was unable to effectively carry out its oversight functions as Master Servicer under the Guaranty Trust and Master Trust structures. CRC, in turn, was unable to oversee how Préstamos Entities' microloans were being administered.

Upon information and belief, Préstamos Felices began diverting loan repayments around the same time. From September 2017 through November 2024, Préstamos Felices transferred hundreds of millions of Mexican pesos (or tens of millions of USD) in microloan payments to the trust accounts each month.

Beginning in December 2024, however, these transfers slowed to a trickle, averaging under 609,709.17 pesos ($31,554.04 USD) per month through April 2025.

The tens of millions of dollars in monthly microloan repayments had not stopped, however. Instead, Préstamos Felices was apparently diverting the repayments elsewhere, most likely for the benefit of the Préstamos Entities and its subsidiaries. To date, the Préstamos Entities have

misappropriated approximately $102 million USD (the "**Diverted Funds**"), and the Préstamos Entities owe CRC an aggregate balance of $282,504,271.26 USD as of May 22, 2025, including post-acceleration moratory interests.

Préstamos Felices' failure to fully and timely transfer the microloan repayments to the trust accounts constitutes an event of default under each of the Loan Agreements, which entitles CRC to acceleration and other remedies.

On January 6, 2025, CRC issued notices of default of the Loan Agreements.

On January 31, 2025, CRC issued notices of early termination of the Loan Agreements.

On April 10, 2025, Préstamos Felices was formally notified of the termination of all servicing agreements entered into under the financing and collections structure. The termination was based on persistent breaches of contractual obligations, including failures to properly transfer collections and fulfill reporting obligations. All necessary actions to fully remove Préstamos Felices from any servicing capacity have been completed, including the revocation of all powers of attorney, mandates, and agency relationships previously granted in favor of Préstamos Felices or any of its affiliates, effectively extinguishing any legal authority to act on behalf of the trusts or their beneficiaries in connection with the receivables or their collections.

As of the date of this declaration, notwithstanding the actions described above, Préstamos Felices continues to receive the microloan repayments and has failed to return the credit files and the money collected according to the loans that belong to the Guaranty Trusts.

The Préstamos Entities control BanFeliz, S.A.P.I. de C.V. ("**BanFeliz**"), a Mexican bank holding corporation. Upon information and belief, PwC Mexico acted as an investment banker to BanFeliz, and assisted in the preparation of investment models and investor presentations with

which the Préstamos Entities approached third parties regarding investment in BanFeliz or other entities under the Préstamos Entities' control in furtherance of their fraudulent scheme and diversion of assets.

## III. The Bankruptcy Proceeding

On April 25, 2025, CRC-LSF together with a group of similarly situated creditors[3] filed an involuntary insolvency petition against Préstamos Felices before the Second District Court for Insolvency Matters, located in Mexico City and with jurisdiction throughout the Mexican Republic (the "**Bankruptcy Court**"). The purpose of the petition (the "**Bankruptcy Filing**") was to initiate a *concurso mercantil* proceeding ("**Bankruptcy Proceeding**")—a judicial reorganization and liquidation process governed by Mexico's *Ley de Concursos Mercantiles* (Mexican Insolvency Law)—in order to preserve the debtor's estate, prevent further dissipation of assets, and protect the collective interests of the creditor body.

The Bankruptcy Court admitted the petition for processing and formally opened the visitation stage (*etapa de visita*), which is the initial phase of the Bankruptcy Proceeding. During this phase, the court appoints an independent examiner (*visitador*) to conduct a detailed financial analysis of the debtor and determine whether the legal requirements for insolvency are met (i.e., general cessation of payments). That examiner has been appointed and will conduct the financial audit and investigation as directed by the court.

---

[3] The following entities were petitioning creditors in the pending Bankruptcy Proceeding (described herein): (1) CRC Capital Release Fund III, Ltd., (2) CRC Single Investor Fund VI, Ltd., (3) CRC Single Investor Fund VII, Ltd., (4) Utah State Retirement Systems, (5) CRC Liquid Strategies Fund, LP, (6) CRC Liquid Strategies Fund, Ltd., (7) CRC CRF V Europe SCSP-RAIF, (8) CRC Single Investor Fund XIX, LLC., (9) Kasad 3, LP, (10) CRC CRF IV, LTD, and (11) CRC Single Investor Fund XV, Ltd.

In connection with the Bankruptcy Filing, CRC sought the issuance of various precautionary measures (*medidas cautelares*) aimed at stabilizing the debtor's financial condition and preventing further dissipation of assets during the initial stages of the insolvency proceeding. These measures included court orders to suspend suspect transactions and prohibit the transfer of funds or assets held by Préstamos Felices. In addition, CRC requested the appointment of an independent fiduciary (*interventor con cargo a la caja*) to oversee the debtor's financial operations and ensure transparency and compliance during the visitation stage of the Bankruptcy Proceeding.

While the Bankruptcy Court granted certain interim protective measures, it denied or postponed the request for a court-appointed fiduciary, citing a lack of specific and reliable evidentiary support. In particular, the Bankruptcy Court found that the record did not sufficiently demonstrate the risk, scope, or mechanisms of ongoing asset diversion that would warrant such relief at that stage of the proceeding. The denial was without prejudice, but the Bankruptcy Court made clear that additional factual support is required before it would revisit the request.[4]

The discovery sought through this Application is intended to fill that evidentiary gap. The targeted documents and communications—relating to financial transfers, account activity, and coordination among insiders—are directly relevant to demonstrating that material assets are being, or have been, concealed, misappropriated, or transferred beyond the reach of creditors. This

---

[4] On or about June 3, 2025, a Federal Mexican district court in Zacatecas issued a so-called suspension order in connection with the involuntary bankruptcy proceeding involving Préstamos Felices. The legitimacy and legal effect of this order are highly questionable, as it was issued by a court of contested jurisdiction and is presently under legal challenge. More fundamentally, the suspension is illegal: it directly contravenes binding jurisprudence from the Mexican Supreme Court of Justice, which has repeatedly held that bankruptcy proceedings—given their essential public interest function—cannot be suspended. Accordingly, even assuming arguendo that the order had any operative effect (which is vigorously disputed), it has no bearing on the relief sought in this Application, which pertains exclusively to the production of critical documents concerning alleged fraud, misappropriation of assets, and other serious misconduct. Such relief falls entirely outside the scope of any purported suspension and remains unaffected by it.

evidence is crucial not only to support renewed requests for injunctive relief and fiduciary oversight, but also to enable meaningful enforcement actions and asset recovery efforts as the Bankruptcy Proceeding advances.

Without access to this discovery, CRC and similarly situated creditors face a substantial risk that key assets will be dissipated, obscured, or transferred out of jurisdiction before the Bankruptcy Court can act. The U.S.-based discovery authorized under Section § 1782 is therefore essential to preserve the integrity of the estate and ensure that the Mexican insolvency process can function as intended.

**IV.    The Contemplated Préstamos Litigation**

In addition to the Bankruptcy Proceeding, CRC intends to initiate commercial and criminal litigation in the Mexican courts (the "**Préstamos Litigation**") against Préstamos Felices and other individuals and entities believed to have orchestrated, directed, or facilitated the fraudulent diversion of funds. The primary objective of the contemplated litigation is to unwind fraudulent transfers, recover misappropriated assets, and seek damages arising from the wrongful depletion of the Master Trust's and Guaranty Trusts' estates. This anticipated litigation arises from a broader scheme involving the diversion of substantial funds from Préstamos Felices, including improper transfers to insiders, affiliates, and related parties in violation of Mexican law.

The contemplated Préstamos Litigation is not speculative or hypothetical. CRC has retained professionals to investigate and prepare legal claims against various parties arising from the same core conduct at issue in the pending proceeding. That investigation is well advanced, and professionals are actively gathering and analyzing relevant facts and legal theories in anticipation of filing actions in Mexico.

Mexican courts do not require that foreign evidence be obtained exclusively through official government-to-government channels. Once litigation is filed, Mexican courts will generally admit foreign documents and testimony—particularly when such evidence is relevant, properly authenticated, and obtained through lawful means, including international judicial assistance mechanisms such as Section 1782.

As part of its investigation, CRC has identified financial transactions in which significant portions of Diverted Funds were processed through the Bank Entities pursuant to the Debit Agreements by the Préstamos Entities. These transactions appear to have played a central role in facilitating the unlawful dissipation of assets, and may involve accounts or instruments controlled, managed, or serviced by the Bank Entities. Likewise, PwC, in its role as investment advisor to the Préstamos Entities, may have relevant information concerning the Préstamos Entities' potentially fraudulent representations to third parties.

In furtherance of both the pending Bankruptcy Proceeding and the contemplated Préstamos Litigation in Mexico, CRC-LSF respectfully seeks this Court's assistance under Section 1782 to obtain narrowly tailored and essential discovery from the Relevant Entities. Specifically, CRC-LSF requests that the Court authorize the issuance of subpoenas—substantially in the form attached as Exhibits 1-3 to the Application—directed to the Relevant Entities.

The proposed subpoenas seek production of documents and communications within the possession, custody, or control of the Relevant Entities, including any responsive materials accessible through their Mexican affiliates, pursuant to their shared infrastructure, operational integration, or common control within the same corporate group. These requests are limited in scope and directed only at information that is clearly relevant to the Bankruptcy Proceeding and

the contemplated Préstamos Litigation, including financial records, transaction details, and communications concerning the transfer of Diverted Funds, including: (i) the flow of Diverted Funds and identity of the individuals and entities that initiated or benefited from the transfers; (ii) the involvement of intermediaries, financial facilitators, or correspondent banking channels; (iii) the structure of any layered, concealed, or offshore transactions; and (iv) the role of U.S.-based financial institutions in processing, advising on, or otherwise facilitating the movement of these assets. The subpoenas also request information concerning potentially fraudulent representations to third parties.

The discovery sought through this Application is essential to CRC-LSF's ability to advance its claims and protect the interests of all creditors in the Mexican proceedings. In the Bankruptcy Proceeding specifically, the information will provide critical support for renewed applications for injunctive relief and the appointment of an independent fiduciary (*interventor con cargo a la caja*) to oversee the debtor's financial operations. It will also assist in tracing misappropriated funds, demonstrating the urgency of protecting remaining estate assets, and ensuring that dissipation is halted before recovery becomes impracticable. The requested documents and communications are also central to establishing the nature and scope of the alleged fraudulent scheme, potentially fraudulent representations to third parties, details regarding the flow of funds, and the identification of recipients and beneficiaries of the diverted assets, and the involvement of intermediaries or co-conspirators in connection with the contemplated Préstamos Litigation, including support for claims for avoidance, restitution, damages, and clawback under Mexican insolvency and civil law. Without access to this discovery, CRC-LSF and other similarly situated creditors will be materially

prejudiced in their efforts to obtain meaningful judicial relief and preserve the value of the debtor's estate.

**V.    The Discovery Sought is Relevant and Necessary for the Bankruptcy Proceeding and Contemplated Préstamos Litigation**

The Relevant Entities have or have access to discoverable information relevant to the Bankruptcy Proceeding and Préstamos Litigation. The proposed Subpoenas seek production of documents and communications within the possession, custody, or control of the Relevant Entities, including any responsive materials accessible through their Mexican affiliates, pursuant to their shared infrastructure, operational integration, or common control within the same corporate group. These requests are limited in scope and directed only at information that is directly relevant to the Bankruptcy Proceeding and Préstamos Litigation, including financial records, transaction details, and communications concerning the transfer of Diverted Funds and potentially fraudulent representations to third parties, including: (i) the flow of Diverted Funds and identity of the individuals and entities that initiated or benefited from the transfers; (ii) the involvement of intermediaries, financial facilitators, or correspondent banking channels; (iii) the structure of any layered, concealed, or offshore transactions; (iv) the role of U.S.-based financial institutions in processing, advising on, or otherwise facilitating the movement of these assets; and (v) documents and communications relating to investment banking and investor communications.

The discovery sought through this Application is essential to CRC-LSF's ability to advance its claims and protect the interests of all creditors in the Mexican proceedings. In the Bankruptcy Proceeding specifically, the information will provide critical support for renewed applications for injunctive relief and the appointment of an independent fiduciary (*interventor con cargo a la caja*) to oversee the debtor's financial operations. It will also assist in tracing misappropriated funds,

demonstrating the urgency of protecting remaining estate assets, and ensuring that dissipation is halted before recovery becomes impracticable. The requested documents and communications are also central to establishing the nature and scope of the alleged fraudulent scheme, the flow of funds, the identification of recipients and beneficiaries of the diverted assets, potentially fraudulent misrepresentations to third parties, and the involvement of intermediaries or co-conspirators in connection with the contemplated Préstamos Litigation, including support for claims for avoidance, restitution, damages, and clawback under Mexican insolvency and civil law. Without access to this discovery, CRC-LSF and other similarly situated creditors will be materially prejudiced in their efforts to obtain meaningful judicial relief and preserve the value of the debtor's estate. Even if the information could be obtained by other means, which is questionable, doing so would require months of litigation, which would render ineffective efforts to prevent the dissipation of assets.

## VI.    The Discovery Sought Cannot Be Obtained in the Bankruptcy Proceeding or Contemplated Préstamos Litigation in Mexico

As provided in the Declaration, the documents and communications sought in the Application from the Relevant Entities cannot be obtained through the existing or contemplated proceedings in Mexico, including the pending involuntary bankruptcy or any related litigation. Mexican procedural law does not provide for broad pre-trial discovery and offers limited means for compelling third-party financial institutions to produce records in civil litigation. In addition, Mexican courts have no enforcement mechanism to compel production or to investigate potential spoliation or concealment.

These structural limitations create significant barriers to obtaining critical evidence—especially from third parties that are not part of the litigation. Mexican courts are receptive to

16

evidence obtained through foreign legal mechanisms, including discovery authorized by United States federal courts pursuant to Section 1782. As such, resorting to international judicial assistance mechanisms is often essential for obtaining necessary documentary evidence. Here, the requested discovery is narrowly tailored and critical to CRC-LSF's ability to develop and present its claims in both the Bankruptcy Proceeding and the contemplated Préstamos Litigation.

Additionally, as discussed below, the elements of Section 1782 are satisfied here. The Relevant Entities are U.S.-incorporated entities and the indirect parent corporation and affiliate and operate under common ownership and control of their Mexican counterparts Banamex Bank, Santander Mexico, and PwC Mexico, respectively, and are believed to possess, or have access to, documents or information relevant to pending and/or contemplated proceedings in Mexico. They are not, and will not be, parties to the Mexican proceedings, and there is no mechanism through the Mexican courts to compel such entities to appear or produce documents or testimony in the context of domestic litigation.

For the foregoing reasons, CRC-LSF respectfully requests the Court grant the Application and order for such other and further relief as is just and proper.

## **ARGUMENT**

### I.    **This Application Satisfies the Statutory Requirements of 28 U.S.C. § 1782**

Section 1782 permits a district court to grant an application where three requirements are met:

> (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or any interested person.

17

*Edelman v. Taittinger (In re Edelman)*, 295 F.3d 171, 175–76 (2d Cir. 2002). The Application satisfies each of the requirements.

### A. The Relevant Entities Are Found in This District.

The first statutory requirement is that the "person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made." *In re Refinería de Cartagena S.A.S.*, No. 23 MISC. 455 (JPC), 2024 WL 95056, at *6 (S.D.N.Y. Jan. 8, 2024) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012)) (granting application and finding that limited liability company maintaining its principal place of business in New York resided in New York). The "resides or is found" language in Section 1782 extends to the limits of personal jurisdiction consistent with due process. *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (affirming grant of Section 1782 discovery application after determining that the respondent is subject to general personal jurisdiction). A corporation is subject to general personal jurisdiction, consistent with due process, in the states of its incorporation or principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-39 (2014). CRC's records and publicly available information indicate that the Relevant Entities have principal places of business in New York City and are therefore subject to this Court's jurisdiction.

### B. CRC-LSF Seeks Discovery from the Relevant Entities for Use in a Foreign Proceeding

To satisfy the requirement that discovery be "for use" in a foreign proceeding, courts have required that the foreign proceeding be "adjudicative." 28 U.S.C. § 1782(a). Thus, to qualify as "for use," the discovery sought "will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Where a foreign proceeding has not yet begun, discovery

can still be "for use" as long as the "proceeding is within reasonable contemplation." *Id.* at 295. *See Gorsoan Ltd. v. Sundlun*, 843 F. App'x 352, 355 (2d Cir. 2021) (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015)) (explaining that "at a minimum . . . the contemplated proceeding is more than a just a twinkle in counsel's eye," but orders can be and have been granted upon applicants' "affirmative representations, backed by concrete facts, that foreign proceedings will be initiated upon receipt of evidence"). CRC-LSF easily satisfies this requirement. The Bankruptcy Proceeding is pending, and the Préstamos Litigation is contemplated, in the Mexican courts.

### C.  CRC-LSF Is an Interested Person

CRC-LSF is an "interested person" within the meaning of Section 1782. The Supreme Court has explicitly stated that an "interested person" is a "complainant [who] 'possess[es] a reasonable interest in obtaining [judicial] assistance.'" *Intel*, 542 U.S. at 256. A litigant in a foreign proceeding plainly falls within the definition of "interested person." *See Lancaster Factoring Co. v. Mangone*, 90 F.3d 38, 42 (2d Cir. 1996) ("The legislative history to § 1782 makes plain that 'interested person' includes 'a party to the foreign . . . litigation.'"); *Refinería de Cartagena S.A.S.*, 2024 WL 95056, at \*7 (holding that a creditor is an interested person). CRC-LSF is both a litigant and creditor in the Bankruptcy Proceeding, and a litigant in the contemplated Préstamos Litigaiton. CRC-LSF is therefore an interested person.

## II.  This Court Should Exercise its Discretion in Favor of Granting the Application

Where, as here, the statutory elements are satisfied, the Court should next evaluate the application "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by

19

example to provide similar means of assistance to our courts." *B&C KB Holding GmbH v. Goldberg Lindsay & Co. LLC (In re B&C Kb Holding GmbH)*, No. 23-1014, 2024 WL 3170983, at *3 (2d Cir. June 26, 2024) (citation omitted). In *Intel*, the Supreme Court outlined four "discretionary" factors comprising this additional evaluation: (i) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal- court judicial assistance;" (iii) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (iv) whether the request is otherwise "unduly intrusive or burdensome." 542 U.S. at 264-65. Each factor weighs in favor of granting CRC-LSF's Application.

### A. The Relevant Entities Are Not Participants in the Foreign Proceeding

Consistent with the first *Intel* factor, courts routinely grant discovery when the party from whom discovery is sought is not a party to the foreign proceeding. *See In re Iraq Telecom Ltd.*, 2019 WL 3798059, at *4 (S.D.N.Y. Aug. 13, 2019) (granting Section 1782 discovery against non-party banks). Here, neither the Relevant Entities nor the Relevant Entities' affiliates are parties to the Bankruptcy Proceeding or contemplated Préstamos Litigation. Rather, Citigroup, Santander CM, and PwC, by virtue of their respective affiliation with Banamex Bank, Santander Mexico, and PwC Mexico, have access to or control over the documents and communications relevant to Bankruptcy Proceeding or contemplated Préstamos Litigation. Moreover, as U.S. entities, the Relevant Entities are not easily within the reach of the Mexican courts.

20

### B.  Mexican Courts and Prosecutors Would be Receptive to this Court's Assistance

The second *Intel* factor also weighs in favor of Applicant. American courts regularly conclude that Mexican courts are receptive to Section 1782 evidence. *See, e.g.*, *In re Application of Operacion y Supervision de Hoteles, S.A. de C.V. for an Ord. to Conduct Discovery for Use in a Foreign Proceeding*, No. 14 MISC. 82 PGG, 2015 WL 82007, at *6 (S.D.N.Y. Jan. 6, 2015) (granting order after concluding that Mexican courts are receptive to such judicial assistance); *Banco Mercantil de Norte, S.A. v. Páramo*, No. 4:23-MC-01188, 2024 WL 4905981, at *5 (S.D. Tex. Nov. 27, 2024) ("Federal courts have repeatedly concluded that there is no authoritative evidence that Mexican courts are hostile to the assistance of U.S. federal courts under Section 1782.").

Further, absent "authoritative proof" that the Mexican court would reject evidence obtained with the aid of Section 1782, this factor weighs in favor of granting discovery. *O'Keefe v. Adelson (In re O'Keeffe)*, 650 Fed. App'x, 83, 85 (2d Cir. 2016) (noting the absence of evidence that the foreign court would be unreceptive to U.S. judicial assistance). The "party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal." *In re Application of Gorsoan Ltd. & Gazprombank OJSC*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (rejecting motion to vacate granting of Section 1782 application).

### C.  The Application Does Not Implicate any Foreign Proof Gathering Restrictions

The third *Intel* factor also weighs in favor of Applicant. It requires this Court to consider "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.

21

"Proof-gathering restrictions" are best understood as "rules akin to privileges that prohibit the acquisition or use of certain materials." *Refinería de Cartagena*, 2024 WL 95056, at *10.

CRC-LSF proceeds in good faith, and requests discovery that is outside the reach of Mexican courts and relevant to its claims, vindicating the purpose of Section 1782. Moreover, as set forth in the attached declaration, CRC-LSF anticipates that the documents and communications requested in the Subpoenas would be admissible before the Mexican courts, would not be prohibited under Mexican law, and would not otherwise circumvent any evidentiary restrictions in Mexico.

### D. The Discovery Sought is Not Unduly Burdensome

The fourth *Intel* factor considers whether Applicant's request for discovery is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245. In addressing this factor, courts should not limit discovery to the scope of discovery available in the foreign proceeding, as "[f]ew if any foreign jurisdictions permit the scope of discovery available in our courts." *Mees*, 793 F.3d, at 302. "Rather, a district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure," *id.*, which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

To the extent the Relevant Entities dispute their obligation to produce records located outside of this district, their argument would be unavailing. "The location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—does not establish a per se bar to discovery under § 1782." *del Valle Ruiz*, 939 F.3d

22

at 533 (quoting *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016)). Rather, Section 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure, which "authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control." *Id.* "Sufficient 'control' may be established for discovery purposes by showing that affiliated corporate entities have actually shared responsive information and documents in the normal course of their business dealings." *Gonzalez v. Verfruco Foods, Inc.*, No. 21-12922, 2023 WL 1794391, at *3 (11th Cir. Feb. 7, 2023) (cleaned up); *accord Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03-CV-5014, 2004 WL 1125659 (S.D.N.Y. May 20, 2004) ("'Control' does not require that the party have legal ownership or actual physical possession of the documents at issue; rather documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.").

The discovery sought in the Subpoenas is appropriately tailored because it only requires the Relevant Entities to provide a subset of the Préstamos Entities' records in their control, which are relevant to the Bankruptcy Proceeding and contemplated Préstamos Litigation within a limited timeframe (with limited exceptions, from January 1, 2023, through the present). Accordingly, the proposed discovery is not unduly intrusive nor unduly burdensome, and this factor weighs in favor of granting the Application.

**CONCLUSION**

Because CRC-LSF satisfies all of the necessary elements required to obtain discovery pursuant 28 U.S.C § 1782 and all relevant discretionary considerations weigh in favor of granting its Petition, CRC-LSF respectfully requests that the Court grant the Application authorizing CRC-LSF to issue the requested Subpoenas on the Relevant Parties.

Dated: June 13, 2025                    Respectfully submitted,

                                        By: /s/ *Douglas E. Spelfogel*
                                        Douglas E. Spelfogel
                                        Carl N. Wedoff
                                        JENNER & BLOCK LLP
                                        1155 Avenue of the Americas
                                        New York, NY 10036
                                        (212) 891-1600
                                        dspelfogel@jenner.com
                                        cwedoff@jenner.com

                                        *Attorneys for CRC Liquid Strategies Fund, LP*