UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: APPLICATION OF CRC LIQUID STRATEGIES FUND, LP

25 Misc. 264 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Before the Court is a motion by CRC Liquid Strategies Fund, LP ("CRC-LSF") to compel Citigroup, Inc. ("Citigroup") to comply with a subpoena issued pursuant to 28 U.S.C. § 1782.[1]  The subpoena seeks production of bank records and communications held by Grupo Financiero Banamex S.A. de C.V. ("Banamex")—a Mexican subsidiary of Citigroup—for use in Mexican proceedings.  Citigroup opposes the motion on the ground that it does not have possession, custody, or control of those documents.

For the following reasons, the Court finds Citigroup lacks the ability to obtain the subpoenaed documents, and denies CRC-LSF's motion to compel.

**I.    Background**

    **A.    Factual Background**[2]

CRC-LSF is a Delaware limited partnership with its principal office in New York.  Dkt. 2 (the "Application") at 2.  Citigroup is an American multinational investment bank and financial services company.  *Id.* at 3.

---

[1] CRC-LSF labels its letter motion a request for a pre-motion discovery conference before filing a motion to compel.  *See* Dkt. 19.  In substance, however, the filing is a memorandum of law in support of a motion to compel, and the Court treats it as such.

[2] The Court's account of the factual background is drawn from CRC-LSF's *ex parte* application for a subpoena pursuant to 28 U.S.C. § 1782.  Dkt. 2 (the "Application").

1

Between June 23, 2017 and September 18, 2019, CRC-LSF entered into three loan agreements with Préstamos Felices en 15 Minutos, S.A. de C.V., SOFOM, E.N.R. ("Préstamos Felices"), a Mexican variable capital corporation.[3] *Id.* at 2, 5. The stated purpose of the loans was to finance the origination of microloans in Mexico for hundreds of thousands of clients. *Id.* at 5. CRC-LSF alleges that, beginning in December 2024, Préstamos Felices concealed documents from CRC-LSF, diverted loan repayments, and misappropriated approximately $102 million. *Id.* at 8–9.

On April 25, 2025, CRC-LSF and similarly situated creditors filed an involuntary insolvency petition against Préstamos Felices before the Second District Court for Insolvency Matters in Mexico City, Mexico. *Id.* at 10. The petition initiated a bankruptcy proceeding, with the aim of preserving the Préstamos Felices estate, preventing further dissipation of assets, and protecting creditors' collective interests. *Id.* As of June 2025, that proceeding was in its initial phase, which entails court appointment of an independent examiner to conduct a detailed financial analysis of Préstamos Felices. *Id.* In addition to the bankruptcy proceeding, CRC-LSF states that it plans to commence commercial and criminal litigation (the "contemplated litigation") against Préstamos Felices in the Mexican courts. *Id.* at 12.

**B.    Procedural History of This Action**

On June 13, 2025, CRC-LSF filed an *ex parte* application pursuant to 28 U.S.C. § 1782, seeking issuance of subpoenas to Citigroup and other entities that purportedly possess records relevant to the bankruptcy proceeding and the contemplated litigation. Dkts. 1–2. Salient here,

---

[3] The Application names numerous affiliates of Préstamos Felices as participants in the alleged fraudulent scheme, such as Vales de Felicidad, S.A.P.I. de C.V., SOFOM, E.N.R. and Contratos y Servicios P.F. S.A. de C.V. Application at 2–3. The Court refers to Préstamos Felices and its affiliates collectively as "Préstamos Felices."

the Application stated that Citigroup is the parent corporation of Banamex, at which Préstamos Felices holds numerous accounts. Application at 17. The Application therefore asserted that Citigroup has "the practical ability to obtain Préstamos Felice's bank statements, wire transfer records, and other documents and communications relevant to the diversion of funds and the machinations of the fraudulent scheme." *Id.* at 1–2.

On June 18, 2025, on the basis of the factual representations in the Application, the Court granted the Application. Dkt. 8. On July 4, 2025, CRC-LSF served the Subpoena on Citigroup. Dkt. 15; *see also* Dkt. 6-1 ("Subpoena"). The Subpoena seeks, *inter alia*, all opening documents associated with Préstamos Felices accounts; records from those accounts of all incoming and outgoing wire transfers for the period from November 1, 2024 to the present; and all contracts, service agreements, or mandates for domiciliation involving Préstamos Felices. Subpoena at 7–10.

On December 9, 2025, CRC-LSF filed a letter stating that Citigroup claims that it lacks the "ability to obtain the subpoenaed records from Banamex." Dkt. 19 ("CRC-LSF Ltr.") at 2. It requested a pre-motion discovery conference in advance of its filing a motion to compel Citigroup to produce the documents responsive to the Subpoena. *Id.* On December 12, 2025, Citigroup opposed the request on the ground that it "does not have possession, custody, or control of the subpoenaed documents," such that "CRC-LSF's previewed motion to compel would be fruitless." Dkt. 22 ("Citigroup Ltr.") at 1.

On December 15, 2025, the Court denied the request for a pre-motion conference, but invited further briefing "on the discrete issue of Citigroup's ability to obtain the subpoenaed

records." Dkt. 23. On December 18, 2025, CRC-LSF filed its supplemental brief. Dkt. 24 ("CRC-LSF Br."). On December 22, 2025, Citigroup responded. Dkt. 25 ("Citigroup Br.").[4]

## II.   Legal Standard

Section 1782 authorizes district courts to order discovery from third parties in the United States for use in foreign proceedings. *See* 28 U.S.C. § 1782.[5] Such discovery shall be produced "in accordance with the Federal Rules of Civil Procedure." *Id.* § 1782(a).

Federal Rule of Civil Procedure 45 permits a party to command, via subpoena, the production of documents that are in the "possession, custody, or control" of a non-party. Fed. R. Civ. P. 45(a)(1)(A)(iii). The documents, however, need not be in the physical possession of the non-party from whom discovery is sought. *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 471 (S.D.N.Y. 2000). Instead, courts have construed "control" broadly to permit discovery from a non-party with "the legal right, authority, or practical ability to obtain the materials sought upon demand." *Id.* (collecting cases); *see also Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions,

---

[4] Citigroup attached, among other exhibits, a declaration from Iñigo Friend, the managing director/head of international technology for Citigroup. Dkt. 25-1 ("Friend Decl."). On December 24, 2025, CRC-LSF requested that the declaration "be stricken, or alternatively that CRC-LSF have an opportunity" to respond, because the declaration "added four pages of argument" to Citigroup's brief, in violation of the page limit the Court had set. Dkt. 26. For the reasons herein, the Court, putting aside the Friend declaration, finds Citigroup's opposition persuasive. Accordingly, the Court denies the motion to strike as moot.

[5] As chronicled in numerous decisions, statutory and discretionary factors govern applications for discovery orders pursuant to § 1782. *See, e.g.*, *In re: Application of Passport Special Opportunities Master Fund, LP for Ord. Compelling Compliance with Subpoena Issued to Deloitte Touche Tohmatsu Ltd. Pursuant to 28 U.S.C. § 1782*, No. 16 Misc. 33 (PAE), 2016 WL 844833, at *3 (S.D.N.Y. Mar. 1, 2016). The Court does not recite or apply these here because CRC-LSF's bid fails at the threshold. CRC-LSF has not "satisf[ied] its burden of establishing that the relevant information is within [Citigroup's] possession, custody, or control," and thus "the [C]ourt's analysis need go no further." *In re FourWorld Event Opportunities Fund, L.P.*, No. 22 Misc. 330, 2023 WL 3375140, at *1 (S.D.N.Y. May 11, 2023).

documents that it does not possess or cannot obtain. . . . However, if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required."). "This principle applies where discovery is sought from one corporation regarding materials which are in the physical possession of another, affiliated corporation." *Dietrich v. Bauer*, No. 95 Civ. 7051, 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000). "[T]he burden is on the party seeking discovery to make a showing that the other party has control over the materials sought." *Credit Bancorp*, 194 F.R.D. at 472 (collecting cases).

**II.    Discussion**

CRC-LSF argues that Citigroup "has the 'practical ability to request from, or influence [Banamex] to comply with the subpoena.'" CRC-LSF Br. at 1 (quoting *Motorola Credit Corp. v. Uzan*, No. 2 Civ. 666, 2013 WL 6098388, at *4 (S.D.N.Y. Nov. 20, 2013)). Citigroup counters that CRC-LSF has not carried its burden of showing Citigroup's custody, possession, or control of the documents. Citigroup Br. at 1–2.

In assessing whether a parent has control over a subsidiary for discovery purposes, courts in this Circuit consider: "(1) the degree of ownership and control exercised by the parent over the subsidiary, (2) a showing that the two entities operate as one, (3) demonstrated access to documents in the ordinary course of business, and (4) an agency relationship." *Sicav v. Wang*, No. 12 Civ. 6682 (PAE), 2014 WL 2624753, at *4 (S.D.N.Y. June 12, 2014) (quoting *DeSmeth v. Samsung Am., Inc.*, No. 92 Civ. 3710, 1998 WL 74297, at *9 (S.D.N.Y. Feb. 20, 1998)).

    **A.    Citigroup's Degree of Ownership and Control Over Banamex**

The first factor is the degree of ownership and control that Citigroup exercises over Banamex. It is, overall, neutral.

Citigroup does not dispute that it is the majority owner of Banamex. *See* Citigroup Br. at 1. "Mere ownership by a parent, however, is not a decisive factor, but merely one factor among several" in assessing ownership and control. *Sicav*, 2014 WL 2624753, at *5. Courts also consider whether: (i) the parent "has established company-wide policies applicable to the subsidiary"; (ii) the parent and subsidiary "hold themselves out to the public as significantly intertwined"; (iii) the parent is "responsible for the compliance, risk management, governance, and financial reporting operations" of the subsidiary; and (iv) there is "substantial overlap between the managing executives" of the parent and subsidiary. *Motorola Credit Corp.*, 2013 WL 6098388, at *3–4 (emphasis in original) (citation omitted); *see also In re Liverpool Ltd.*, No. 21 Misc. 392, 2021 WL 5605044, at *3 (S.D.N.Y. Nov. 24, 2021).

At least two of these indicators of ownership and control are present here.

First, Citigroup has "established basic principles for the coordination of the activities of its foreign subsidiar[y]." *In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria*, 2006 WL 1328259, at *7 (S.D.N.Y. May 16, 2006) ("*In Re Ski Train Fire*"). For example, Banamex employs a "comprehensive risk management process," which is "aligned with Citigroup's enterprise-wide model"—a fact Citigroup does not dispute. CRC-LSF Br. at 4 (citing Dkt. 24-2 at 37–38). Banamex also provides compensation for key personnel in the form of deferred Citigroup stock awards. *Id.* These facts suggest coordination between Citigroup and Banamex. *See, e.g.*, *In re Ski Train Fire*, 2006 WL 1328259, at *7 (parent enacted "a clear vision of . . . a global business, requiring cooperation and coordination among its many parts").

Second, Citigroup and Banamex hold themselves out as closely related. In December 2025, for example, Citigroup oversaw and executed a 25% minority sale of Banamex equity—a sale in which Citigroup's chief executive played a prominent role. CRC-LSF Br. at 2. In

addition, Citigroup reports Banamex's performance as part of its own consolidated financial reporting to the Securities and Exchange Commission. *Id.* at 4. Although Citigroup does not classify Banamex as one of its five reportable operating segments (instead labeling it a legacy franchise), Citigroup nevertheless describes Banamex's operations and reports its financial data. Dkt. 25-2 at 31. Citigroup therefore holds out to the public that it has a close connection to Banamex. *See, e.g.*, *Motorola Credit Corp.*, 2013 WL 6098388, at *4 (subsidiary held itself out as wealth management arm of parent and established "new executive committee" to improve coordination with parent).

The third indicator—the parent's responsibility for the subsidiary's operations—presents a less clear picture. In December 2024, Citigroup completed an "operational separation" from Banamex, in advance of a Banamex initial public offering that has not yet occurred. Citigroup Ltr. at 2. This resulted in the separation of Banamex's small business, middle-market banking, and consumer operations from Citigroup's other Mexican operations. CRC-LSF Br. at 1–2. Nonetheless, Citigroup's Resolution Plan—from August 2025—stated that Citigroup and banking branches such as Banamex have "key interconnections relate[d] to operational and technology functions (including infrastructure), global functions, applications and associated support services, real estate, corporate functions and business support services." Dkt. 25-3 ("Resolution Plan") at 55. Accordingly, it appears that Citigroup remains involved in Banamex's operations, but not necessarily to the extent that courts deem sufficient to establish control. *Compare In re Mun*, No. 22 Misc. 163, 2022 WL 17718815, at *3 (S.D.N.Y. Dec. 15, 2022) ("A parent company's limited involvement with its subsidiary's operations . . . is insufficient to establish the necessary control."), *and In re FourWorld Event Opportunities Fund, L.P.*, No. 22 Misc. 330, 2023 WL 3375140, at *3 (S.D.N.Y. May 11, 2023) ("*In re FourWorld*")

7

("the fact that [parent] exercises high-level legal and compliance oversight over [subsidiary's] business does not mean that it is '*responsible for*'" those operations (emphasis in original)), *with Motorola Credit Corp.*, 2013 WL 6098388, at *4 (finding ownership and control where subsidiaries' "compliance, risk management, governance, and financial reporting operations" were overseen by parent company), *and In re Ski Train Fire*, 2006 WL 1328259, at *7 (same, where parent's shareholders were responsible for appointing the subsidiary's supervisory board, which "has the power to monitor and control" the entity "responsible for the day-to-day operation of the company").

The fourth indicator of ownership and control—shared leadership—has not been established. CRC-LSF does not contend that any individual "hold[s] management positions in both companies." *In re Ski Train Fire*, 2006 WL 1328259, at *7.

Based on the foregoing considerations, this first factor lends partial support, but not more, to CRC-LSF's claim that Citigroup has the ability to access documents in Banamex's custody.

### B. Whether Citigroup and Banamex Operate as a Single Entity

The second factor examines whether Citigroup and Banamex operate as one entity—*i.e.*, whether their day-to-day operations are substantially in common with each other. This factor favors Citigroup.

A parent and subsidiary may be found to operate as one entity where, for example, they share "employees," "facilities," or "office space." *In re Vivendi Universal, S.A. Sec. Litig.*, No. 2 Civ. 5571, 2009 WL 8588405, at *4 (S.D.N.Y. July 10, 2009). CRC-LSF does not contend that any of these indicators are present here. Nor does it provide any facts to undermine Citigroup's representation that "Banamex employees do not report to Citigroup employees, and Citigroup

8

and Banamex do not share employees, facilities, or office space." Citigroup Br. at 3. Banamex thus appears to operate as a "separately run" entity based in Mexico, "with no footprint in the United States." *In re FourWorld*, 2023 WL 3375140, at *3. CRC-LSF has not satisfied its burden as to this factor. *See, e.g.*, *id.* at *3 (holding that application for discovery "fails on the second factor" where "there [was] no evidence supporting a conclusion that" parent and subsidiary "operate as one"); *In re Liverpool Ltd.*, 2021 WL 5605044, at *3 (similar); *cf. In re Brookfield Infrastructure Partners L.P.*, No. 25 Misc. 278, 2025 WL 3215607, at *15 (S.D.N.Y. Nov. 18, 2025) (finding control where parent and subsidiary "agree[d] to share the existing office space").

### C. Whether Citigroup Has Access to Banamex's Documents in the Ordinary Course of Business

The third factor is whether Citigroup has access, in the ordinary course of business, to Banamex's documents. This factor also favors Citigroup.

In assessing a parent company's access and ability to obtain documents, courts consider whether documents of the type sought "flow freely between" the parent and subsidiary, *Hunter Douglas, Inc. v. Comfortex Corp.*, No. 8 Misc. 85, 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999), and whether the parent has access to such documents "in the ordinary course of business," *Credit Bancorp, Ltd.*, 194 F.R.D. at 472.

The Subpoena seeks, *inter alia*, account opening documents, communications related to domiciliation services, monthly account statements, and transaction-level information. *See* Subpoena at 7–10. CRC-LSF argues that Citigroup has access to such documents based on Banamex's privacy policy and Citigroup's global search function. These facts, however, do not support that the documents at issue "flow freely" between Citigroup and Banamex.

9

The Banamex privacy policy is a notice meant to inform customers "about the type of personal data" that Banamex collects. Dkt. 22-1 (the "privacy policy" or "PP") at 12. It states that Banamex may "require and process your personal data within the following categories:"

> [I]dentification data, authentication data, financial and/or asset data, tax data, demographic data, immigration data, academic data and professional data, data on your consumption preferences in relation to our products and services. We may also request and process biometric data (such as fingerprints, voice recognition, facial identification features, and/or data relating to keyboard typing patterns and behavior when using our electronic banking services) and location data.

*Id.* at 13. The privacy policy states that it collects such data to, *inter alia*, "analyze your profile in order to determine whether you are eligible to purchase certain products and services," "accredit, validate, and verify your identity," and "[r]espond to and follow up on investigations and reviews of complaints." *Id.* at 14–15. And it states that Banamex may transfer such data to "[a]ffiliates, subsidiaries, and entities" of Banamex for purposes such as "carry[ing] out actions aimed at preventing illegal activities" and "determin[ing] whether you are eligible to purchase" products offered by an affiliate. *Id.* at 18.

These provisions suggest that certain information flows between Citigroup and Banamex—specifically, personal data falling into the categories listed above. But they do not support that there is a free exchange of the documents sought by the Subpoena. Contrary to CRC-LSF's representation that the privacy policy "defines 'personal financial information' as including financial records such as account statements and transaction histories," CRC-LSF Br. at 3, the policy does not define personal financial information at all, let alone in that fashion. The privacy policy instead appears to be a routine notice—akin to that encountered in creating an account on a smart phone application or social media platform—that *personal* data will be collected and shared, largely to enable Banamex and its affiliates to engage in targeted marketing efforts, maintain communication with customers, and customize customers' banking experiences.

10

The global search function also does not establish Citigroup's access to the documents CRC-LSF seeks. That tool merely enables Citigroup to see accounts that may exist across its network. Citigroup Br. at 4. On receipt of the subpoena, Citigroup used the search function to run a query that identified multiple relevant accounts at Banamex. CRC-LSF Br. at 3. Citigroup could not, however, see any further information about those accounts. Citigroup Br. at 4. The existence of the search function therefore does not suggest that Citigroup has routine access to documents such as financial transaction records or monthly account statements.

Accordingly, CRC-LSF has not carried its burden of showing Citigroup's access.[6] This factor supports Citigroup. *See, e.g.*, *Sicav*, 2014 WL 2624753, at *8–9 (access not demonstrated where plaintiffs failed to show "regular access" or identify instances when parent sought documents from its subsidiaries); *In re Ski Train Fire*, 2006 1328259, at *6 (same, where parent distributed circular to subsidiaries and subsidiaries submitted reports to parent, but there was "no evidence that in their day-to-day business transactions the companies exchange documents" or that "they have exchanged documents relating to the issues in this lawsuit"); *cf. Coventry Cap. US LLC v. EEA Life Settlements Inc.*, 334 F.R.D. 68, 73 (S.D.N.Y. 2020) (access established where evidence "indicates a flow of information and documents" from subsidiary to parent "in the ordinary course of business"); *In re Brookfield Infrastructure Partners L.P.*, 2025 WL 3215607, at *15 (same, where agreement with subsidiary gave parent "full access" to all "books, records, accounts, tax returns, contracts, commitments, and records" of subsidiary).

---

[6] CRC-LSF states that Citigroup "has not even contacted Banamex to request the underlying documents." CRC-LSF Br. at 4. But this "improperly shifts the burden" to Citigroup. *In re Liverpool*, 2021 WL 5605044, at *3 (rejecting argument that parent failed to provide affirmative evidence of its lack of access to documents held by subsidiary); *see In re Boustany*, No. 23 Misc. 203, 2024 WL 473569, at *2 (S.D.N.Y. Feb. 7, 2024) (similar).

11

D.   **Whether Citigroup and Banamex Have an Agency Relationship**

The fourth factor considers whether an agency relationship exists between the parent and subsidiary. Because CRC-LSF does not argue that Citigroup acts as an agent of Banamex, and the evidence does not suggest as much, this factor also supports Citigroup. *See, e.g.*, *Sicav*, 2014 WL 2624753, at *9 (agency relationship not established where "[p]laintiffs only half-heartedly argue[d] that" parent and subsidiary had such a relationship); *In re Ski Train Fire*, 2006 WL 1328259, at *7 (same, where "there is no evidence that" parent acts as subsidiary's agent "in the legal sense").

E.   **Overall Assessment**

Because three of the four factors favor Citigroup, CRC-LSF has not met its burden of showing that Citigroup has the "legal right, authority, or ability" to obtain documents from Banamex on demand. *DeSmeth*, 1998 WL 74297, at *9. In sum, although Citigroup is a majority owner of Banamex, has some operational involvement with Banamex, and coordinates with Banamex on various matters, the two entities do not share offices or employees, engage in the free-flowing exchange of documents of the sort sought here, or have an agency relationship. Accordingly, Citigroup cannot be said to "control" the documents in Banamex's custody. *See, e.g.*, *In re FourWorld*, 2023 WL 3375140, at *3 (no control where parent oversaw subsidiary's business operations and used subsidiary to conduct brokerage activities, but petitioner failed to demonstrate substantial management overlap or shared day-to-day operations); *In re Liverpool Ltd.*, 2021 WL 5605044, at *3 (same, where subsidiary was wholly owned by parent and managing executive served as officer of both parent and subsidiary, but facts showed "[l]imited interconnectedness"); *In re Mun*, 2022 WL 17718815, at *3 (same, where parent company led

compliance for, and shared director with, wholly-owned subsidiary, because such "limited involvement" was "insufficient to establish the necessary control").

## CONCLUSION

For the reasons stated above, the Court denies the motion to compel. The Clerk of Court is respectfully directed to terminate the motion pending at docket 19.

SO ORDERED.

                                                          *Paul A. Engelmayer*
                                                          PAUL A. ENGELMAYER
                                                          United States District Judge

Date: January 6, 2026
      New York, New York